IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| NAIM H. AL-JABERY, | ) | 4:06CV3157 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| CONAGRA FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Naim H. Al-Jabery (Al-Jabery) is a Muslim. Although he is now an American citizen, he emigrated from Iraq. The plaintiff's ability to speak English is limited.

Using the services of his own interpreter, Al-Jabery made a written application in English for a position in "[s]anitation/or any" job at ConAgra's ham processing plant in Lincoln, Nebraska. He got the job. However, when he was later ordered to work on the pork processing line, he refused to follow his supervisor's direction to report to the line and he lost his position.

Al-Jabery claims that he was discriminated against on the basis of his religion and his national origin. Among other things, the plaintiff asserts that he has a firmly and sincerely held religious belief that precludes him from even touching pork products. ConAgra has filed a motion for summary judgment. The motion will be granted.

### *I. BACKGROUND*

The material undisputed facts are these:

1.  Al-Jabery is a male, he is a Muslim and he is from Iraq. (Filing 45 at CM/ECF page 1 and ¶ B 2 (Order on Final Pretrial Conference) (Uncontroverted

Facts).)  Although controverted, I assume for purposes of the motion for summary judgment that the plaintiff "has firmly [and sincerely] held religious beliefs that preclude him from touching pork products."  (*Id.* at CM/ECF page 2 and ¶ C 2 (Plaintiff's Stated Issues).)[1]

2. During the relevant times, ConAgra Foods, Inc., a Delaware corporation, operated a ham processing plant in Lincoln, Nebraska under the name "Cook's Family Foods."  (*Id.* at CM/ECF page 1 and ¶ B 3.)

3. On August 5, 2003, Al-Jabery applied for employment at the plant and submitted an employment application in English stating that he wanted to be considered for "[s]anitation/or any" position at the plant.  (*Id.* at CM/ECF page 2 and ¶ B 6.)  On August 26, 2003, the plaintiff was hired for a sanitation position, working as an "Equipment Cleaner."  (*Id.* at ¶ B 7.)

4. The sanitation job required Al-Jabery to clean machines that processed pork, and it is undisputed that the plaintiff actually did that work.  (Ex. E, Al-Jabery Dep., at CM/ECF page 21 and deposition page 51.)[2]  Al-Jabery claims that he was not compelled to actually pick up pork as a part of his sanitation job while working the

---

[1]Law professor Marci Hamilton, who was a law clerk to Justice Sandra Day O'Connor, a visiting scholar at the Princeton Theological Seminary, and counsel for the prevailing party in *City of Boerne v. Flores*, 521 U.S. 507 (1997) (successfully challenging the Religious Freedom Restoration Act), casts doubt on the theological validity of the plaintiff's assertion.  "Experts say . . . that the Muslim religion does not prohibit . . . touching pork" as opposed to "*eating* the pork."  Marci Hamilton, *The Dangers of Accommodation of Religion Based on Religious Status, As Opposed to Religiously Motivated Practice, And the Duty of Religious Individuals to Obey the Law,* (April 5, 2007) (italics in original), available at http://writ.news.findlaw.com/hamilton/20070405.html.

[2]The exhibits referred to in this opinion may be found at filing 31, the defendant's index of evidence.  The plaintiff offered no additional evidence.

evening shift, and, for present purposes, I assume that claim is true. Nevertheless, it also undisputed that the policy of ConAgra, as recounted by the human resources manger, clearly required that sanitation workers, and not production line workers, remove pork that had fallen to the floor of the processing plant when required to do so by management:

> The Company's Sanitation Standard Operating Procedures (SSOP) and Good Food Manufacturing Practices (GMP) require production line workers to refrain from picking product and scraps off the floor and sanitation employees are required to do this task. All employees, including Mr. Al-Jabery, received a copy of these policies at the time of hire, and the employees signed an acknowledgment form agreeing to comply with the policies.

(Ex. B., Kevin Bartels Aff., at CM/ECF page 6 ¶ 4.)

5. Despite the fact that the plaintiff became an American citizen prior to his employment with ConAgra (Ex. E, Al-Jabery Dep., at CM/ECF page 18 and deposition page 10) and thus may be presumed to speak and understand English to some degree, Al-Jabery took an interpreter from Catholic Social Services to interpret for him during the employment interview. (*Id.* at CM/ECF page 19 and deposition page 15.) The interpreter filled out the written application for the plaintiff. (*Id.* at CM/ECF page 20 and deposition page 40.) Al-Jabery did not understand the words spoken by the ConAgra representative during the interview because they were spoken in English, and, instead, he relied upon the interpreter to translate the words into Arabic. (*Id.* at CM/ECF page 19 and deposition pages 15-16.) In the same vein, Al-Jabery does not know what the interpreter said in English to the ConAgra representative when conveying Al-Jabery's words to the interviewer. (*Id.*)

6. During his deposition, the plaintiff stated that he not know the present whereabouts of the interpreter, and he thought that the interpreter may be outside the

country. (*Id.* at CM/ECF page 20 and deposition page 40.) In any event, there is no evidence in the record from the interpreter about what the interpreter actually said to the ConAgra representative or what the interpreter actually said to Al-Jabery. Although Al-Jabery asserts that he told the interpreter that he would not touch meat because of his religion when he interviewed for the job, there is no evidence that the interpreter actually conveyed that information to the interviewer. On the contrary, the ConAgra interviewer, after consulting her written notes, has sworn that Al-Jabery "told me that he preferred not to work with meat[,]" but he "made no indication that his request was more than personal preference, and [he] made no mention of his religious beliefs." (Ex. D, Cheryl Lindner Aff., at CM/ECF page 16 ¶ 4.)

7. According to the human resources manager, the standard hiring practices of the company typically call for the applicant to be informed during the initial interview that ConAgra processes ham and ham products. (Ex. B., Kevin Bartels Aff., at CM/ECF page 6 ¶ 5.) For these types of positions, ConAgra does not hire applicants "who refuse to handle pork and pork products because it is an essential function of most jobs in a ham plant." (*Id.*)

8. Other Muslims work at the plant and some of them have worked on the production line. (*Id.* at CM/ECF page 8 ¶ 12.) No Muslim workers "have ever indicated" to the human resources manager "that their religion precludes them from touching pork." (*Id.*) However, ConAgra does endeavor to accommodate the religious beliefs of its Muslim employees. For example, Muslims were allowed to pray at work, to clean up before prayers, to extend their rest periods during Ramadan in order to break their fast, and, during Ramadan, not to work with exposed meat while they were fasting if they preferred not to do so. (Ex. C., Chasity Rutjens Aff., at CM/ECF page 13 ¶ 9.)

9. Not only did ConAgra have a general policy of being sensitive to its Muslim employees, it specifically treated Al-Jabery in a kindly fashion. For example,

on March 15, 2005, the human resources manager approved the plaintiff's request for a leave of absence from March 14, 2005 to May 30, 2005 so that the plaintiff could visit his family in Iraq. (Ex. B, Kevin Bartels Aff., at CM/ECF page 6 ¶ 6.)

10. There were no problems between Al-Jabery and ConAgra until shortly after Al-Jabery returned from Iraq. By then, and instead of working the night shift, Al-Jabery was working the second shift. (Ex. E, Al-Jabery Dep., at CM/ECF page 22 and deposition page 54). For about three weeks prior to June 14, 2005, the plaintiff had been supervised by Chasity Rutjens, a female. (*Id.* at CM/ECF page 23 at deposition page 58.) Prior to June 14, 2005, the plaintiff had no problems with Rutjens or the male supervisor before her. (*Id.* at CM/ECF page 23 and deposition pages 57-58.)

11. On June 14, 2005, Rutjens advised the human resources manager, Kevin Bartels, that the plaintiff was taking unauthorized breaks and the plaintiff's direct supervisor had been unable to locate the plaintiff for approximately one hour. (Ex. B, Kevin Bartels Aff., at CM/ECF page 6 ¶ 8.) Rutjens told Bartels that she was contemplating reassigning the plaintiff to the pork production line where he could be more closely monitored. (*Id.*) By the next day, June 15, 2005, Rutjens had confirmed with two Vietnamese employees who worked on the sanitation crew that Al-Jabery had been missing from an area the sanitation crew was expected to clean and two other supervisors had told her that "Al-Jabery had a pattern of wondering off and taking excessive breaks." (Ex. C, Chasity Rutjens Aff., at CM/ECF page 12 ¶ 6-7.) Accordingly, she told Al-Jabery that she was transferring him to the pork production line. (*Id.* ¶ 7.) Al-Jabery protested, and Rutjens took the plaintiff to Bartels, the human resources manager. Bartels supported Rutjens and told Al-Jabery that he must report to the pork production line, but that he would receive the same pay, hours and benefits. (Ex. B, Kevin Bartels Aff., at CM/ECF page 7 ¶ 9.) Due largely to Al-Jabery's limited ability to speak English, what precisely was said by Al-Jabery, Rutjens and Bartels on June 15, 2005, is the subject of some dispute, but there is no

evidence that Al-Jabery told Bartels or Rutjens that he could not work on the pork line because of his religious beliefs. (*E.g.*, Ex. B, Kevin Bartels Aff. at CM/ECF page 8 ¶ 12; Al-Jabery Dep., Exhibit E, CM/ECF page 24 and deposition pages 63-64.) In the end, and on June 15, 2005, Al-Jabery refused to report to the pork production line, left the facility and was termed a "voluntary quit" by ConAgra for refusing the transfer. (Ex. B, Kevin Bartels Aff., at CM/ECF page 7 ¶ 9.)

12.   Al-Jabery does not dispute that his Vietnamese coworkers told management that he was absent from the work area. (Ex. E, Al-Jabery Dep., at CM/ECF page 23 and deposition page 60.) Rather, he offers the excuse that he was taking the trash out. (*Id.*) Nor does he dispute what the other supervisors supposedly told Rutjens.

13.   During this litigation, when the plaintiff was asked what accommodation he wanted from ConAgra, he answered: "I sought not to be required to touch pork." (Ex. F at CM/ECF page 31 and Answer 14 (Pl.'s Answers to Interrogs.).) In his deposition, the plaintiff also stated that he would have taken a position in a part of the plant that also processed beef since his religion did not preclude him from coming into contact with beef. (Ex. E, Al-Jabery Dep., at CM/ECF page 25 and deposition page 68.). However, the human resources manager has sworn that "[t]here were no other positions in the plant for which Mr. Al-Jabery was qualified, that would not require him to be in direct contact with pork." (Ex. B, Kevin Bartels Aff. at CM/ECF pages 7-8 ¶ 11). Al-Jabery has presented no evidence to dispute the truth of that statement.

14.   There is no evidence that the plaintiff was treated less favorably than similarly situated employees who held different religious beliefs or whose national origin was different than Al-Jabery's national origin. (*E.g.*, Ex. B, Kevin Bartels Aff., at CM/ECF page 8 ¶ 13.)

## *II. ANALYSIS*

Remembering that he has no direct evidence of discrimination, the plaintiff makes two claims. Relying on Title VII, the plaintiff claims he was discriminated against on the basis of his religion and on the basis of his national origin. (Filing 45 at CM/ECF pages 2-5, ¶ C (Order on Final Pretrial Conference, Controverted and Unresolved Issues).)[3]

Giving Al-Jabery the benefit of the doubt, he cannot establish a prima facie case for either claim. Even if he could, ConAgra has also established that it acted for a legitimate non-discriminatory reason and Al-Jabery has no evidence that would permit a reasonable jury to conclude otherwise. *See*, *e.g.*, *Al-Zubaidy v. TEK Industries, Inc.*, 406 F.3d 1030, 1037 (8th Cir. 2005) (in the absence of direct evidence of discrimination, *McDonnell Douglas* burden shifting analysis applied to the claim of Shiite Muslim of Iraqi descent who asserted that he was fired, for among other reasons, because of his religion and national origin).

### *A. Al-Jabery's Failure to Make a Prima Facie Case*

#### *Religion*

In order to make a prima facie case of religious discrimination under Title VII the plaintiff must present evidence that would allow a reasonable jury to conclude that (1) he had a bona fide religious belief that conflicted with an employment requirement; (2) he informed the defendant of his belief; and (3) the defendant disciplined or fired the plaintiff because he did not comply with the requirement. *See*, *e.g.*, *Wilson v. U.S. West Commc'ns*, 58 F.3d 1337, 1340 (8th Cir. 1995) (sustaining

---

[3]The plaintiff's state law claim was abandoned in the pretrial conference order. *Id.*

judgment for employer requiring employee to obscure anti-abortion button despite the claim that doing so would force her to violate her religious belief that she was required to bear "living witness" to the sanctity of the unborn). In this case, the plaintiff has failed to present competent evidence that he informed ConAgra that he could not touch pork. Therefore, he cannot make out the second element of his prima facie case.

The person who interviewed Al-Jabery has sworn that he made no claim that he could not touch pork for religious reasons, and Al-Jabery has failed to produce his interpreter to dispute that statement. Furthermore, Al-Jabery completed an employment application that indicated he would perform *any job*. Given the fact that he was applying for a job in a ham processing plant, it strains credulity to believe that he also told ConAgra that he did not mean what his application clearly stated. Still further, there is no evidence that any other Muslim employee held the religious views that Al-Jabery held regarding touching pork. Indeed, the evidence is that the other Muslim employees made no such assertions to ConAgra. As a result, there was no reason for ConAgra to assume that since the plaintiff was a Muslim it was obvious that he could not touch pork. Finally, when he was reassigned to the pork line there is no evidence that he told Rutjens or Bartels that he could not do so for religious reasons.

Al-Jabery does claim that when he worked on the night shift he cleaned machines, but he was not required to actually pick up pork. For the sake of this motion, I assume that assertion to be true. However, the fact that the plaintiff was allowed to perform one particular task and not another does not prove that ConAgra knew that the plaintiff held a particular religious belief about the task he did not perform. Indeed, it was the general and preexisting policy of ConAgra that all sanitation employees were required to pick up pork when it fell to the ground if required by management to do so. In short, the fact that one supervisor allowed Al-Jabery to do one thing (clean machines that touched pork) does not mean that

-8-

ConAgra knew that Al-Jabery's religious beliefs precluded him from doing another job (touching pork).

*National Origin*

In order to establish a prima facie case of national origin discrimination under Title VII, and in the absence of direct evidence of discrimination, the plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position and performed his duties adequately; and (3) he suffered an adverse employment action under circumstances that would permit a fact finder to infer that unlawful discrimination had been at work. *See*, *e.g.*, *Habib v. NationsBank*, 279 F.3d 563, 566 (8th Cir. 2001) (sustaining summary judgment against employee who claimed she was terminated, for among other reasons, because she was a Muslim of Pakistani national origin). The plaintiff cannot show that he performed his duties adequately, and he cannot show that he was terminated under circumstances that would permit a reasonable fact finder to infer that his national origin was the real reason for the discharge.

It is undisputed that two Vietnamese coworkers confirmed that Al-Jabery was not where he was expected to be and it is undisputed that two other supervisors complained that Al-Jabery had a pattern of taking excessive breaks. Even though the plaintiff claims he could have offered an excuse had he been given the opportunity to do so, there was no reason for Rutjens or Bartels to disbelieve the information they had received from two supervisors and two coworkers. As a result, the plaintiff cannot prove the second element of his prima facie claim of national origin discrimination.

Furthermore, it is apparent that the plaintiff cannot establish the third element of his national origin claim, that is, that he was terminated under circumstances that

would permit a fact finder to infer that unlawful discrimination had been at work. The undisputed evidence is that Bartels treated the plaintiff favorably and allowed him to travel to Iraq for an extended period of time immediately prior to the incident in question. Insofar as Rutjens is concerned, she supervised the plaintiff for three weeks prior to the incident in question without the slightest suggestion that she harbored any animus for people of Iraqi national origin.

### *B. ConAgra's Undisputed Showing of Justification*

*Religion*

Even if the plaintiff had made out a prima facie case of religious discrimination, ConAgra has provided uncontroverted evidence that it could not offer Al-Jabery an accommodation without suffering an undue hardship. *See*, *e.g.*, *Seaworth v. Pearson*, 203 F.3d 1056, 1058 (8th Cir. 2000) (assuming that the plaintiff had established prima facie case of religious discrimination, but holding that a requirement that defendants restructure their method of operation to treat the plaintiff as an independent contractor, rather than an employee, so that the plaintiff would not be required to provide a social security number in violation of his religious beliefs was an unreasonable accommodation because the cost of "restructuring" would be more than minimal).

Essentially, Al-Jabery seeks to be the only person at a ham processing plant who was not required to touch pork even if the needs of the company demanded it. As a matter of law, this would have caused a fundamental restructuring in how ConAgra operated its ham plant because it is obvious that the cost to ConAgra would have been more than minimal. Plainly put, a ham plant cannot be efficiently run by

catering to the idiosyncratic desires of a Muslim worker not to touch the plant's main product.[4]

The plaintiff seems to argue that he could have been left in his sanitation position and allowed to clean machinery without also being required to pick up pork. He argues that he was allowed to do so on the night shift, and, so he asserts, the prior allowance proves that such an accommodation could have been made on the second shift without undue difficulty. Among others, the most obvious problem with this argument is that the reason for moving the plaintiff to the pork line in the first place was because he needed more supervision than could be provided on the sanitation crew. In short, the cost of this accommodation–allowing the plaintiff to remain in a position where management believed he could not be adequately supervised–is, on its face, more than minimal.

### *National Origin*

Assuming, for the sake of argument, that Al-Jabery could make a prima facie claim of national origin discrimination, ConAgra has proven that its reason for the proposed transfer was not a pretext. There is no counter evidence that would allow a jury to conclude otherwise.

Even if one assumes that Al-Jabery's unarticulated excuse for being missing was true and that Al-Jabery was otherwise a good worker, ConAgra was entitled to

---

[4] I also note that despite the plaintiff's suggestion that he was willing to work on the beef line, Bartels has sworn that there was no position available for which the plaintiff was qualified that did not require the employee to touch pork. The plaintiff has produced no counter evidence on that point.

act on the statements of two Vietnamese co-workers and two supervisors who suggested, in one way or another, that Al-Jabery was frequently missing and thus required greater supervision. *See*, *e.g.*, *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 242, 246 (1st Cir. 2006) (sustaining summary judgment for meat packer on claim by Muslim immigrant from Afghanistan that he had been wrongly terminated in retaliation for making a claim that he had been subjected to a hostile work environment because of his religious beliefs and ethnic background; employer admitted that the plaintiff had made a prima facie case, but the employer also presented unchallenged evidence that the company had terminated the plaintiff for specific incidents of misconduct).

In other words, in assessing "pretext," the court's focus must be on the *perception of the decision maker*, that is, whether the employer believed its stated reason to be credible. *Id.* at 246. Although the employer's good faith belief is not automatically conclusive, it is not enough for a plaintiff merely to question the employer's justification. *Id.* At the summary judgment stage, the employee must present specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to hide the employer's real and unlawful motive of discrimination. *Id.* In summary, given the absence of counter evidence from the plaintiff, no reasonable jury could disbelieve ConAgra that it transferred Al-Jabery because of supervision concerns and not because he was a Muslim from Iraq.

IT IS ORDERED that the motion for summary judgment (filing 30) is granted and judgment will be entered by separate document.

October 24, 2007.　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　*s/Richard G. Kopf*
　　　　　　　　　　　　　　　　　　　　United States District Judge